880 A.2d 552

**John Harold ALEXANDER, Appellee,**

**v.**

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 2004.

Decided Aug. 15, 2005.

Timothy P. Wile, Esq., James M. Sheehan, Esq., Harold H. Cramer, Esq., Andrew S. Gordon, Esq., Harrisburg, for Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing.

Peter Joseph McHugh, Esq., for John Harold Alexander.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice CASTILLE.

This appeal raises questions regarding the application of the Ignition Interlock Devices Law (hereinafter, "Interlock Law"), 42 Pa.C.S. § 7001 *et seq.* (repealed), to a recidivist driving under the influence ("DUI") offender, where one or more of

the offender's earlier convictions occurred before the enactment of the Interlock Law.[1] The Commonwealth Court panel below held that it is an unlawfully retroactive application of the Interlock Law to enforce the interlock requirement on the basis of convictions which occurred before the statute was enacted. We disagree, and accordingly, we reverse.

The version of the Interlock Law at issue on this appeal authorized courts to order the installation of an ignition interlock device as a condition of license restoration as a discretionary matter in the case of first-time DUI offenders, but required courts to order the installation of such devices as a condition of license restoration in the case of serial offenders:

(a) **First offense.**—In addition to any other requirements imposed by the court, where a person has been convicted for a **first offense** under 75 Pa.C.S. 3731 (relating to driving under influence of alcohol or controlled substance),[2] **the court may order** the installation of an approved ignition interlock system on each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

(b) **Second or subsequent offense.**—In addition to any other requirements imposed by the court, where a person has been convicted of a **second or subsequent violation** of 75 Pa.C.S. 3731, **the court shall order** the installation of an approved ignition interlock device on each motor vehicle

---

1. Although the Interlock Law was in effect at all times relevant to this appeal, it was later repealed effective February 1, 2004, and the repealed law was replaced with 75 Pa.C.S. §§ 3801 and 3805. Substantive changes were made in the new legislation, but the retroactivity question which is at issue in this appeal is pertinent to both the repealed and the new versions of the Interlock Law.

2. Section 3731 was subsequently repealed effective February 1, 2004, and replaced with 75 Pa.C.S. § 3802, which relates to driving under the influence of alcohol or a controlled substance.

owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

42 Pa.C.S. 7002 (repealed) (emphases added).[3] The first-time offender provision in subsection 7002(a) became effective September 30, 2001, while the repeat offender provision in subsection (b) became effective one year earlier, on September 30, 2000.

The facts underlying this controversy are simple and undisputed: On November 2, 1990, appellee was arrested for DUI, in violation of former 75 Pa.C.S. § 3731(a). Appellee was accepted into an Accelerated Rehabilitative Disposition ("ARD") diversionary program on April 9, 1991 for that first offense, and his operating privilege was suspended for three months. On June 25, 1993, appellee was arrested for a second DUI offense, and he was convicted on February 14, 1994. Appellant, the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing ("the Department") notified appellee on March 7, 1994, that his operating privilege was suspended for one year effective April 11, 1994.

Appellee was arrested for his third DUI offense on February 14, 2001, in Chester County; he pleaded guilty on July 23,

---

**3.** In *Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (2003), this Court found that subsection 7002(b) was unconstitutional, on separation of powers grounds, to the extent that it delegated executive responsibilities to the courts (*i.e.*, the responsibilities to order installation of the ignition interlock devices and to certify to the Department that they had been installed). The *Mockaitis* Court also held that the provision, along with similarly unconstitutional delegations of power found in subsection 7003(1) and a portion of subsection 7003(5), were severable from the rest of the Interlock Law. 834 A.2d at 500–03. The new version of the Interlock Law, which was drafted in obvious response to *Mockaitis*, now imposes the executive responsibility upon the Department, not the trial courts, to require installation of the devices in appropriate circumstances, and does not require the trial court to certify compliance to the Department. 75 Pa.C.S. § 3805(a).

2001; and he was sentenced on September 5, 2001. As part of that sentence, the trial judge ordered appellee to comply with the provisions of the Interlock Law "if applicable." The Department thereafter notified appellee that his operating privilege would be suspended for one year and that he must comply with the provisions of the Interlock Law to have his operating privilege restored at the end of that year. The notice also advised appellee that, if he failed to comply with the Interlock Law, his operating privilege would be suspended for an additional year.

Appellee filed a statutory appeal to the Court of Common Pleas of Chester County, challenging the Department's notice imposing the interlock requirement and the potential imposition of an additional one-year license suspension. The interlock/ suspension appeal was listed and argued on April 11, 2002. On May 22, 2002, the court issued an order and opinion finding that appellee's 1991 ARD was not a prior conviction for purposes of the Interlock Law, and further concluding that appellee was but a first-time DUI offender in February of 2001. In so concluding, the court did not consider appellee's 1994 DUI conviction, a conviction appellee now concedes occurred. (It appears from the April 11 transcript that the existence of the 1994 conviction was not argued to the court.) The court also determined that it "had no authority" to impose an ignition interlock requirement upon appellee as a first-time offender, as a matter of discretion, because the first-time offender provision did not become effective until after appellee was convicted and sentenced for his 2001 offense. The court therefore sustained appellee's appeal and ordered that "the requirement that [appellee] submit to the imposition of a guardian interlock device is STRICKEN."

The Department appealed to the Commonwealth Court, challenging the trial court's legal finding that an ARD resolution is not a conviction for purposes of the Interlock Law and arguing that appellee's 2001 DUI conviction was actually his third conviction for purposes of the statute. In a published opinion, a panel of the Commonwealth Court agreed that an ARD resolution plainly is a conviction under the Interlock

Law. *Alexander v. Commonwealth of Pennsylvania, Department of Transportation,* 822 A.2d 92, 94 (Pa.Cmwlth.2003), *citing* 42 Pa.C.S. § 7002(c) and *Schneider v. Department of Transportation, Bureau of Driver Licensing,* 790 A.2d 363 (Pa.Cmwlth.2002), *appeal granted,* 577 Pa. 674, 842 A.2d 408 (2004), *appeal dismissed* (March 31, 2004).[4] The panel nevertheless affirmed the trial court order sustaining appellee's appeal. In the panel's view, the Department's argument that Section 7002's recidivist provision could be triggered on the basis of DUI convictions which occurred prior to the enactment of the Interlock Law would require a retroactive application of the statute, in violation of Section 1926 of the Statutory Construction Act. *See* 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). The panel reasoned that application of the interlock requirement based upon appellees prior DUI convictions would have a legal effect different from that which those convictions had under the law in effect at the time of the earlier convictions. *Alexander,* 822 A.2d at 94 (citing *McMahon v. McMahon,* 417 Pa.Super. 592, 612 A.2d 1360, 1364 (1992)).

The Department sought discretionary review in this Court, raising as its sole issue the retroactivity question. This Court granted review.

In its brief, the Department now raises an additional, preliminary issue concerning jurisdiction—to wit, whether a driver's sole avenue to challenge the Department's imposition of the interlock requirement is an administrative proceeding before the Department, as opposed to the statutory appeal appellee pursued in the Court of Common Pleas. The Department correctly notes that subject matter jurisdiction cannot be waived and may be raised at any stage in the litigation;

4. Section 7002(c) plainly states as follows:

(c) Alternative disposition.—For the purpose of this section, acceptance of Accelerated Rehabilitative Disposition, an adjudication of delinquency or a consent decree under Chapter 63 (relating to juvenile matters) or any other form of preliminary disposition of any charge brought under 75 Pa.C.S. 3731 shall be considered a first conviction.

therefore, we will address this issue notwithstanding the Department's failure to raise it sooner. *See, e.g., Heath v. Workers' Compensation Appeal Bd. (Pennsylvania Board of Probation and Parole)*, 580 Pa.174, 860 A.2d 25, 29 (2004); *In re Adoption of N.M.B.*, 564 Pa. 117, 764 A.2d 1042, 1045 n. 1 (2000).[5]

■ The Department argues that the Common Pleas courts lack subject matter jurisdiction to hear appeals from the Department's imposition of an ignition interlock requirement because such appeals are administrative in nature and therefore should be brought before the Department in the first instance. The Department argues that the interlock requirement is, "just another restoration requirement, similar to the requirement that a driver seeking restoration from a suspension pays a restoration fee or provides proof of current financial responsibility." Appellant's Brief at 17 (footnotes omitted). Because the interlock requirement is a mere condition of license restoration, the Department argues that an order imposing the requirement cannot be the subject of a statutory appeal under 75 Pa.C.S. § 1550. This is so, the Department maintains, because Section 1550 authorizes appeals to the Courts of Common Pleas in only six specific instances, none of which encompass license restoration conditions:

(a) General rule.—Any person who has been denied a driver's license, whose driver's license has been canceled or whose operating privilege has been recalled, suspended, revoked or disqualified by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

As support for its argument, the Department also cites *Mockaitis, supra,* because the *Mockaitis* Court, after finding that

---

**5.** This jurisdictional issue, as well as the substantive issue accepted for review, presents a question of law; hence, this Court's review is plenary. *MCI Worldcom, Inc. v. Pennsylvania Public Utility Comm'n,* 577 Pa. 294, 844 A.2d 1239, 1245 n. 3 (2004); *Mockaitis,* 834 A.2d at 492.

the driver's equal protection claim "disappeared" in light of this Court's striking certain portions of the Interlock Law as unconstitutional, noted in passing that, "[s]hould appellee or any other serial DUI offender be aggrieved by an actual determination made by the Department in enforcing the remaining provisions of the Act, the administrative setting is the appropriate forum to raise such a challenge." 834 A.2d at 503.

In response, appellee aptly cites to *Probst v. Commonwealth, Department of Transportation*, 578 Pa. 42, 849 A.2d 1135 (2004), which was decided a week after the Department filed its brief raising its jurisdictional challenge in the case *sub judice*. In *Probst*, this Court squarely rejected the Department's argument that appeals from the Department's imposition of the interlock requirement do not fall within the parameters of Section 1550. In holding that the Courts of Common Pleas have jurisdiction over such appeals, *Probst* found that the interlock requirement is not a mere condition of restoration, but rather an extension of a license suspension:

As we have stated, "[j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs." *Mockaitis*, 834 A.2d at 495 (quoting *Riedel v. Human Relations Commn. of Reading*, 559 Pa. 34, 739 A.2d 121, 124 (1999)). Applying this principle, Appellees case falls squarely within the general class of controversies that 75 Pa.C.S. 1550(a) directs the court vested with jurisdiction under the Judicial Code to review.[ ] PennDOT's Notice to Appellee does not only provide for a restoration of operating privilege requirement. Rather, the Notice also provides for a second year suspension of Appellee's operating privilege under [the Interlock Law]. This latter action of suspension, which Appellee challenged, is one of the determinations that the General Assembly has committed to a court's appellate jurisdiction under 75 Pa.C.S. 1550(a). Therefore, we conclude that the court of common pleas had subject matter jurisdiction over Appellee's appeal.

*Id.* at 1141 (footnote omitted). Notwithstanding the passing observation in *Mockaitis,* it is the actual holding in *Probst,* where the jurisdictional issue was squarely joined, which plainly controls here. *Probst* requires a conclusion that the trial court had jurisdiction to entertain the instant retroactivity-based challenge to the legality of the Department's imposition of the interlock requirement.[6]

▮ Turning to the substantive issue, this Court must determine whether a driver whose previous DUI convictions predate the effective date of the Interlock Law, but whose latest DUI occurred after the effective date, may, as a consequence of the latest conviction, be subject to the recidivist provisions of the Interlock Law, or whether imposition of the interlock requirement in such an instance constitutes an impermissibly retroactive application of the statute. The Department argues that subjecting appellee to the interlock requirement as a condition to restoring his license after it was suspended for his latest DUI conviction does not implicate retroactivity because the triggering event is that third DUI

6. Appellee notes that the holding in *Probst* is consistent with *Commonwealth v. Javit,* 734 A.2d 922 (Pa.Super.1999). In *Javit,* the Superior Court held that a person who holds a probationary license pursuant to 75 Pa.C.S. 1554 may be convicted of driving while operating privilege is suspended or revoked (DUI-related) in violation of 75 Pa.C.S. 1543(b) on the basis of a violation of the restricted hours applicable to the license. The court rejected the argument that the issuance of the probationary license negated a finding of suspension, holding that Javit's license remained suspended during the period of time that he held the probationary license:

> The possession of a probationary license is not the equivalent of restoration of appellant's full operating privileges. Just as the penalty of suspension of operating privileges cannot be circumvented by possession of a valid out-of-state license, *Commonwealth v. Claar,* 152 Pa.Cmwlth. 153, 618 A.2d 1140 (1992), suspension is not terminated by the possession of the in-state probationary license. Since appellant's operating privileges had not been fully restored at the time of his three infractions, he was properly convicted of violation of 1543.

*Id.* at 925. The sound reasoning in *Javit* is persuasive in this circumstance as well. When an operator is issued a license subject to installation of an interlock device, this interlock-restricted license is the functional equivalent of a probationary license in that it restricts the operators use of a motor vehicle to the conditions stated in the statute. If the condition of installing the interlock device is not met, the drivers license is not restored; it remains suspended for an additional year.

conviction, which occurred on September 5, 2001, safely after the effective date of the Interlock Law. The Department analogizes this case to this Court's recent decision in *Lehman v. Pennsylvania State Police*, 576 Pa. 365, 839 A.2d 265 (2003), which rejected an *ex post facto* challenge to the Pennsylvania State Police's ("PSP") application of the federal Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 922, to prevent a former convict from purchasing a rifle. Lehman's application to purchase the rifle was denied because he had been convicted of larceny for stealing a case of beer (worth $3.38) thirty-eight years earlier, in 1962. The GCA made it unlawful for a person who had been convicted of any crime punishable by imprisonment for a term exceeding one year to possess a firearm. 18 U.S.C. § 922(g)(1). When Lehman stole the beer, his crime of larceny was classified as a felony, punishable by up to five years. The same crime would likely have been classified as a third degree misdemeanor, subject to a maximum term of imprisonment of one year, if it had occurred in 2000, when Lehman sought to purchase the rifle.

In challenging the PSP's denial of his application to purchase the firearm, Lehman claimed, among other things, that application of the GCA violated the *ex post facto* clause of the United States Constitution. Lehman argued that the GCA changed the punishment for his 1962 larceny and inflicted a greater punishment than the law allowed at the time he stole the case of beer. In an opinion by Mr. Justice Eakin, this Court rejected Lehman's challenge, first noting that, "[t]he *Ex Post Facto* Clause speaks only to retroactive punishment .... " and thus, "the issue becomes whether the civil disability imposed on [Lehman]—the inability to purchase firearms— constitutes punishment." 839 A.2d at 270 (citing *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)). The *Lehman* Court then found that the intent of the GCA was not to punish prior bad conduct, but rather to protect society from the risk posed by firearms making their way into the hands of individuals who had engaged in past criminal behavior. After an exhaustive survey of relevant authority, the Court reasoned as follows:

*Brady* and *Mitchell*[7] also suggest that the civil disability imposed on appellant by the GCA does not run afoul of the *Ex Post Facto* Clause. Those cases, which concern punishment imposed for actually violating § 922(g), emphasize that the conduct punished by the GCA is not the prior crime; rather, it punishes the possession of a firearm-after the GCA's enactment-by those with felony convictions. "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." *Cox v. Hart*, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922). The GCA is simply not retrospective in the sense forbidden by the *Ex Post Facto* Clause: it does not punish conduct that occurred before its adoption. Because the civil disability imposed on appellant neither constitutes punishment nor punishes conduct that occurred prior to the GCA's adoption, preventing him from purchasing or possessing firearms does not violate the *Ex Post Facto* Clause.

839 A.2d at 273–74. The Department contends that this Court's reasoning in *Lehman* is equally applicable to the retroactivity issue posed in this case.

The Department also cites this Court's decision in *Commonwealth v. Johnson*, 520 Pa. 165, 553 A.2d 897 (1989), where we determined that the application of a new five-year statute of limitations to a crime that, when committed, carried a two-year statute of limitations, was not unlawfully retroactive. This Court held that: "Only where a vested right or contractual obligation is involved is a statute applied retroactively when it is applied to a condition existing on its effective date which resulted from events which occurred prior to that date." *Id.* at 900 (citing *Creighan v. City of Pittsburgh*, 389 Pa. 569, 132 A.2d 867 (1957)). Arguing that no vested right or contractual obligation is implicated in this case, the Department urges that applying the Interlock Law to appellee, premised upon a recidivist status arising from qualifying DUI convictions which

7. *United States v. Brady*, 26 F.3d 282 (2d Cir.1994) and *United States v. Mitchell*, 209 F.3d 319 (4th Cir.2000) were two Circuit Court decisions upholding the GCA against *ex post facto* challenges.

predated passage of the Interlock Law, is not an unlawfully retroactive application of the statute.

Appellee counters that, pursuant to Section 1926 of the Statutory Construction Act, no statute may be construed to operate retroactively unless the General Assembly expressly intended it to be so applied. Appellee claims that using the DUI convictions he amassed before the effective date of the Interlock Law as predicate offenses for determining application of the recidivist provisions of the Interlock Law gives those earlier DUI convictions a different legal effect than they had at the time they were committed. Because the Interlock Law imposes new legal burdens on appellee's past criminal behavior, appellee contends, it implicates a substantive right. Appellee then argues that the General Assembly did not specify that it intended the Interlock Law to apply retroactively to DUI convictions predating the Law's effective date, and accordingly, this substantive law cannot be construed to apply retroactively.

We agree with the Department that its application of the Interlock Law to appellee neither violates any restriction on the retroactive effect of statutes nor does it implicate any substantive right. Section 1926 provides in plain terms that: "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." This Court has emphasized that,

> It is manifest, however, that this principle becomes pertinent only after it has been determined that a proposed operation of a statute would indeed be retrospective. In this regard, our courts have held that a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.

*Gehris v. Commonwealth, Dept. of Transp.*, 471 Pa. 210, 369 A.2d 1271, 1273 (1977). Thus, under this Courts precedent, "Retroactive laws have been defined as those which take away or impair vested rights acquired under existing laws, create new obligations, impose a new duty, or attach a new disability in respect to the transaction or consideration already past."

*Nicholson v. Combs,* 550 Pa. 23, 703 A.2d 407, 411 (1997)
(citing *Black's Law Dictionary,* 1184 (6th ed.1990)).

The General Assembly did not expressly state that the
Interlock Law is to be applied retroactively. Thus, an ignition
interlock requirement could not be imposed as a licensing
restriction for a DUI conviction which occurred before the
effective date of the Interlock Law—such as, for example,
appellees second DUI conviction in 1994. But that is not the
issue posed in this appeal. The Departments interlock notifi-
cation in this case was occasioned by appellees **third** DUI
conviction, which arose after enactment of the Interlock Law.
If appellee had not been convicted in September of 2001 for an
additional DUI, he would not be required to install an inter-
lock device on his motor vehicle under pain of additional
license suspension. It is not the two previous DUI convictions
that have exposed appellee to the interlock requirement; it is
his third conviction, occurring after passage of the Law, which
brings him within its purview.

The statute does not reach into the past and increase the
punishment, or the civil consequences, of concluded DUI
convictions. Rather, it takes the recidivist DUI defendant as
it finds him after the post-Interlock Law DUI conviction. In
this case, the relevant "fact or condition" which came into
existence before the Interlock Law was adopted was that
appellee had two prior DUI convictions. However, the fact
that appellees punishment and license restriction for his prior
crimes had expired did not give rise to some "right" not to be
recognized as the recidivist he would be if and when he
committed another DUI offense after the Interlock Law was
adopted. Nor did the Interlock Law impose a new "disability"
relating to the past convictions; the disability, to the extent
the license restriction can be deemed one at all, came into
being only as a consequence of appellees new offense, it was
imposed in response to that offense, and it became a condition
of returning to licensed status after a suspension that followed
from the new offense. There is no doubt that the Interlock
Law imposes a licensing consequence for recidivist DUI of-
fenders that is greater than the licensing consequence such

recidivist offenders faced prior to the enactment of the statute. However, the statute does not look back and enhance the punishment recidivist DUI offenders received for their prior DUI convictions. Instead, the enhanced consequence applies solely with respect to those DUI convictions occurring after the effective date of the law. Since imposition of the interlock requirement involves no retroactive application of the Interlock Law, the Commonwealth Court erred in upholding the trial court's order on Section 1926 retroactivity grounds.

The Department is correct that this Court's *ex post facto* analysis in *Lehman* supports a finding that application of the Interlock Law in the case *sub judice* has no retroactive effect.[8] The *Lehman* Court found that the Gun Control Act involved a civil penalty, not punishment for a crime committed prior to the Act's enactment, and thus there was no viable complaint of retroactive application.

> The legislative history behind [the Gun Control Act] suggests it was enacted to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society. *Scarborough v. United States,* 431 U.S. 563, 572, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (internal quotes omitted). The evident intent of the disability imposed by [the Act] was not to punish past conduct, but to protect society from the risk of firearms in the hands of those who have demonstrated by their past criminal behavior that they have difficulty conforming to the law. Thus, the intent of [the Act] was to promote public safety, not to impose punishment.

*Lehman,* 839 A.2d at 271. Likewise, it is apparent that the intent of the Interlock Law is not to impose additional punishment for past conduct, but instead to protect society from the risks posed by current offenders whose history demonstrates that they may be inclined to continue to defy the DUI laws. The installation of an interlock device acts as a deterrent to

8. Although *Lehman* involved an *ex post facto* challenge, rather than a statutory retroactivity challenge brought under Section 1926, the analysis is still instructive here because, as we have noted above, it necessarily involved a consideration of whether the statute operated retroactively.

any driver who would attempt to drive while under the influence. When ordered by the Department as a condition of license restoration, it is merely a method of limiting access to a motor vehicle for a period of time subsequent to the license suspension required by statute. The interlock requirement is, in some respects, an accommodation to repeat DUI offenders, in that it permits them to operate their motor vehicles **despite** their history, at least so long as the offender has not been drinking alcoholic beverages prior to attempting to drive the vehicle. The alternative to installing the device is an additional year's suspension. Thus, the law's goal is enhanced public safety on our roadways, and not to punish belatedly repeat DUI offenders for their earlier transgressions.

This Court's decisions in *Nicholson v. Combs* and *Commonwealth v. Johnson* provide additional support for our conclusion that application of the Interlock Law to appellee does not cause the statute to operate in an unlawfully retroactive fashion. In both cases, this Court found that the retroactive application of a statute is only impermissible where vested rights or contractual obligations are implicated. *Nicholson* 703 A.2d at 411; *Johnson,* 553 A.2d at 900 (citing *Creighan, supra* ). Operating a motor vehicle is a privilege, not a right:

> We must emphasize that driving is not a property right; rather it is a privilege. [*Plowman v. Department of Transportation, Bureau of Driver Licensing,* 535 Pa. 314, 635 A.2d 124 (1993) (citing *Maurer v. Boardman,* 336 Pa. 17, 7 A.2d 466 (1939)), *aff'd sub nom., Maurer v. Hamilton,* 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940).] To obtain the benefit of such a privilege, a driver must abide by the laws of the Commonwealth relating to the privilege.

*Commonwealth v. Zimmick,* 539 Pa. 548, 653 A.2d 1217, 1222–23 (1995). Since no property right or contractual obligation was implicated when the Department required appellee to install an interlock device as a condition of his license restoration, the Commonwealth Court's finding that the law operated in an improperly retroactive fashion was erroneous.

In summary, the Department did not err in considering appellee's two prior DUI convictions as predicate offenses for

purposes of determining his status as a recidivist offender under the Interlock Law, and the Department's notice to appellee that he was required to comply with the Interlock Law, upon pain of having his license suspended for an additional year, was lawful. The trial court, therefore, erred in striking the interlock requirement, and the Commonwealth Court erred in affirming that order. Accordingly, the order of the Commonwealth Court is reversed.